UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRIS HEFFNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) CAUSE NO. 1:09-cv-01458-WTL-DKL |
| | ) |
| CITY OF INDIANAPOLIS, et al., | ) |
| | ) |
| Defendants. | ) |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendants' Motion for Summary Judgment (dkt. no. 46). The motion is fully briefed and the Court, being duly advised, **GRANTS IN PART** the Defendants' motion to the extent and for the reasons set forth below.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.").

## FACTUAL BACKGROUND

The relevant facts of record, viewed in the light most favorable to the Plaintiff, who is the

non-moving party, are as follow.

In 2005, an ordinance was passed by the City-County Council for the Consolidated City of Indianapolis ("City") and Marion County consolidating the Indianapolis Police Department ("IPD") and the Marion County Sheriff's Department ("MCSD"). Pursuant to the ordinance, the Indianapolis Metropolitan Police Department ("IMPD") was created in January 2006, and officers of the IPD and the MCSD officially became officers of the IMPD on January 1, 2007.

When the merger plan was announced many officers had concerns, including Plaintiff Chris Heffner, who had been a member of the MCSD since 1988. He regularly voiced his concerns during official staff meetings, including those attended by Sheriff Frank Anderson. He was also outspoken about his opposition to the way the merger was being implemented to fellow officers outside of official meetings and to friends who were unrelated to the department.

On December 22, 2006, someone called 911 and threatened to kill Sheriff Anderson. As Deputy Chief of Investigations, Robinett received a copy of the tape. He assigned Sergeant Mark Hess to investigate the call because he had expertise in cell phone technology. Hess's investigation into the source of the cell phone call was inconclusive, and Robinett eventually transferred the investigation to Sergeants David Durant and Ahmad Abdur-Rahim. After listening to the recording of the 911 call, Durant and Abdur-Rahim informed Robinett that they recognized the voice of the caller to be that of Heffner.

Captain Chris Boomershine in investigations took the tape to David Wyser at the Marion County Prosecutor's Office and told him he thought the caller on the tape was an officer. After listening to the tape, Wyser's response was that the voice sounded like Chris Heffner. Wysner suggested the following course of action: Five people who knew Heffner would be asked to

listen to the tape to see if they recognized the voice. They could only listen to the tape three times and would not be informed in advance that others had identified Heffner. If at least three of the people identified the voice as Heffner, charges would be filed.

Despite this advice, on the recommendation of Sheriff Anderson the investigation was instead referred to the FBI. On August 24, 2007, FBI agents interviewed Heffner regarding the phone call. Heffner denied making the call and agreed to provide a voice exemplar to the FBI agents. After the meeting, Heffner was placed on administrative leave pending the investigation, a decision made by IMPD Chief Spears after discussing the issue with Sheriff Anderson. Heffner received his salary while on administrative leave; however, he did not receive any overtime pay and had to surrender his gun, badge, and car. Heffner remained on administrative leave from August 24, 2007, until March 2009, when he was allowed to return to the IMPD on administrative desk duty. In April 2009, a federal grand jury declined to indict Heffner and the criminal investigation concluded. On or about April 15, 2009, Heffner was returned to the same position with the IMPD that he had had before he was placed on administrative leave.

## DISCUSSION

Heffner asserts two claims against the Defendants: (1) a claim pursuant to 42 U.S.C. § 1983 alleging retaliation in violation of the First Amendment; and (2) a state law defamation claim.[1] The Defendants move for summary judgment on both claims.

### A. Section 1983 Claim

Heffner alleges in his § 1983 claim that the Defendants violated his First Amendment

---

[1] In his complaint, Heffner also alleged that he was demoted from his appointed rank of Major in retaliation for his speech; however, in his response brief he states that he is no longer pursuing a claim based on his loss of appointed rank.

3

rights by placing him on administrative leave in retaliation for speaking as a citizen on a matter of public concern. The Defendants argue that this claim is barred by the statute of limitations. The Court agrees.

Both Heffner and the Defendants agree that the statute of limitations applicable to Heffner's § 1983 claim is two years. The act of retaliation about which Heffner complains–being placed on paid administrative leave–occurred on August 24, 2007. Because Heffner did not file this lawsuit until November 24, 2009, the Defendants argue that his § 1983 claim is barred because it was filed after the two-year limitations period expired.

Heffner concedes that his "cause of action accrued on August 24, 2007, when he was placed on administrative leave without pay, the date on which he first suffered a deprivation in retaliation for his speech." Heffner Response at 10. However, Heffner argues that the statute of limitations was tolled under Indiana law pursuant to the continuing wrong doctrine, and therefore his cause of action is not time barred. Specifically, Heffner asserts that under Indiana law the continuing wrong doctrine is applied in circumstances in which a plaintiff "did not suffer a 'single harm, measurable and compensable,'" but rather was harmed by a series of violations. Heffner argues:

> Heffner was placed on administrative leave indefinitely; he did not know to what extent he would suffer a deprivation. He did not know how many overtime hours he would lose, nor did he know how long the suffering as a result of the uncertainty as to his status would last. Each day that Anderson kept Heffner away from the Department constituted a new violation; additionally, each paycheck that did not include Heffner's guaranteed overtime constituted a new violation. Each new violation started the limitations period anew.

Heffner's Brief at 11.

Heffner is correct that state law provides both the statute of limitations and the tolling

rules applicable to a § 1983 claim. *See Heard v. Sheahan*, 253 F.3d 316, 317 (7th Cir. 2001). However, while some cases refer to the doctrine of continuing wrong as a tolling doctrine, "the usual and it seems to us the correct characterization of the doctrine of continuing violation is that it is a doctrine governing accrual . . . not a tolling doctrine."[2] *Id.* at 319 (citations omitted). And, as Heffner recognizes, the date that a claim accrues is governed by federal, not state law. *Id.* at 317-18.

Federal common law does recognize the doctrine of continuing violation. *Id.* at 318. "A violation is called 'continuing,' signifying that a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *Id.* at 319. However, "[w]hen a single event gives rise to continuing injuries . . . the plaintiff can bring a single suit based on an estimation of his total injuries, and that mode of proceeding is much to be preferred to piecemeal litigation despite the possible loss in accuracy." *Id.* In other words, there is a difference between a series of unlawful actions and a single unlawful action that causes a series of harmful effects.

This case presents the latter situation. Heffner alleges one wrongful act by the Defendants–placing him on administrative leave as retaliation for exercising his first amendment rights. While Heffner continued on administrative leave for many months, and while as a result of being on administrative leave Heffner received many paychecks that were less than they

---

[2]Indeed, while Heffner argues that the continuing wrong doctrine is a tolling doctrine, his characterization of the doctrine as it applies to his case makes it clear that he is not really arguing that the statute of limitations was *tolled*, but rather that a new cause of action *accrued* with passing day and each paycheck.

would otherwise have been, the fact that the effects of the Defendants' one act continued for a long time does not transform that act into a series of acts for statute of limitations purposes. When, as here, "a single event gives rise to continuing injuries," the continuing wrong doctrine does not apply. *Heard*, 253 F.3d at 319.

This conclusion is supported by the holding in *Pitts v. City of Kankakee*, 267 F.3d 592 (7th Cir. 2001). In that case, the plaintiffs alleged that as retaliation for opposing the mayor the defendants placed signs on three rental properties labeling each property a "SLUM PROPERTY" and identifying one of the plaintiffs as the owner of the property. The signs were placed in June 1997. In August 1999 the city council ordered the removal of one of the signs, but it remained on the property until April 2000. One of the plaintiffs sold the property owned by him in October 1999, but the sign was not removed from that property until December 1999.

On November 18, 1999, the plaintiffs filed suit, alleging that the defendants had violated their First Amendment rights by placing and maintaining the signs in retaliation for their political opposition. The parties agreed that a two-year statute of limitations applied; the defendants argued that it had expired in June 1999, two years after the signs were placed on the properties. The plaintiffs argued that the continuing violation doctrine applied because the signs had remained on the properties, thereby continuing the harm to them, and therefore they could file suit until two years after the signs were removed.

The Seventh Circuit disagreed with the plaintiffs. While noting that "[d]rawing the line between something that amounts to a 'fresh act' each day and something that is merely a lingering effect of an earlier, distinct violation is not always easy," the court held that the city "took only one action for each parcel of land, and each action affected only one person: on

6

particular dates, it posted "SLUM PROPERTY" signs." *Id.* at 596. The retaliatory acts alleged by the plaintiffs–the posting of the signs–were complete in June 1997, and "[o]nly their effects lingered on until the signs were removed." *Id.* at 597. The court also rejected the plaintiffs' argument that "the defendants' refusal to take down the offending signs was a fresh violation that makes this lawsuit timely," reaffirming the well-established principle that "the refusal to undo a violation is not a 'fresh act' of discrimination (or here, retaliation), but instead is a persisting effect of past [retaliation] that does not affect the running of the statute of limitations." *Id.*

So it is with Heffner's § 1983 claim in this case. The retaliatory act identified by Heffner–placing him on administrative leave–was complete in August 2007. The fact that the defendants failed to remedy this violation and return Heffner to his regular position until April 2009 did not extend the statute of limitations. Neither did the fact that Heffner received lower paychecks each payday create separate causes of action; those paychecks were not independent acts of retaliation by the defendants, but merely a lingering effect of their single retaliatory act.[3] Accordingly, Heffner's § 1983 claim is barred by the statute of limitations.

### B. Defamation Claim

In addition to his § 1983 claim, Heffner asserts state law defamation claims against Anderson and Robinett. The Court's jurisdiction over these claims is based upon 28 U.S.C. §

---

[3]Thus this case does not fall under the "paycheck accrual rule" pursuant to which a new cause of action arises with each paycheck paid at a discriminatory rate because the defendant commits a discrete, deliberate discriminatory act with each paycheck. *See generally Groesch v. City of Springfield,* 635 F.3d 1020, 1027 (7th Cir. 2011). Neither does this case fall under the extension of the paycheck accrual rule established by the Lilly Ledbetter Fair Pay Act of 2009, which applies to pay discrimination claims. *Id.*

7

1367, which provides for the exercise of supplemental jurisdiction over claims based upon state law that are closely related to the federal claim in a case. However, "[w]hen the federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts." *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7thCir. 2008). There are exceptions to that general rule, and the court should decide the merits of a supplemental state claim when (1) the statute of limitations has run, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is "absolutely clear" how the state claims should be decided. *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008).

This third exception applies to Heffner's defamation claim against Anderson, inasmuch as he concedes in response to the instant motion that there is no evidence of Anderson making any defamatory statements. Accordingly, the Court will grant summary judgment in favor of Anderson with regard to Heffner's defamation claim. However, none of the exceptions applies with regard to Heffner's defamation claim against Robinett. S*ee id.* ("[T]he district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case."). Accordingly, the Court declines to exercise supplemental jurisdiction over the defamation claim against Robinett; that claim will be dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, the Defendants' motion for summary judgment is **GRANTED** as to Heffner's § 1983 claim and as to his defamation claim against Defendant

Anderson. Heffner's defamation claim against Robinett is **DISMISSED WITHOUT PREJUDICE**.

SO ORDERED: 08/16/2011

_William T Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification